UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN T. WILLET,                                               15-CV-330-RJA-MJR
                                                              REPORT AND RECOMMENDATION
                Plaintiff,

    -v-

CITY OF BUFFALO, *et al.*,

                Defendants.
_____

This case has been referred to the undersigned by the Hon. Richard J. Arcara for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 14). Before the Court is a motion for summary judgment dismissing plaintiff's complaint filed by defendants City of Buffalo, Buffalo Police Department, Officer Nicholas Militello, Lieutenant Jeffrey Rinaldo, and John/Jane Doe Officers. (Dkt. No. 16). For the following reasons, it is recommended that the motion be granted in part and denied in part.

## BACKGROUND

Plaintiff John Willet brings this civil rights action against the City of Buffalo, the Buffalo Police Department, Officer Nicholas Militello, Lieutenant Jeffrey Rinaldo, John/Jane Doe Officers (collectively, the "City Defendants"), and former Officer John Cirulli. (Dkt. No. 1). The following facts are taken from Willet's verified complaint and the parties' motion papers.[1]

---

[1] Willet submitted his verified complaint, among other documents, in opposition to the City Defendants' motion. A verified complaint has the effect of an affidavit and may be used to oppose summary judgment. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment.").

*April 19, 2014 Incident*

The complaint arises out of Willet's arrest in the City of Buffalo on April 19, 2014. Late that evening, Cirulli was on patrol when he observed Willet's vehicle traveling at a high rate of speed. (Dkt. No. 29 at 3 (Felony Complaint)).[2] Cirulli pulled his vehicle alongside Willet's vehicle and asked him to slow down. (*Id.*). Willet instead exited his vehicle and ran away. (*Id.*). Cirulli and Militello managed to apprehend Willet, and he was placed under arrest. (*Id.*). Heroin and crack cocaine were later found on Willet's person and in his vehicle. (*Id.*).

After Willet was handcuffed and placed face down on the ground, Cirulli began to slap, punch, and kick him. (Dkt. No. 1 (Verified Complaint) ¶¶16-20). Militello and Rinaldo are alleged to have ignored Willet's pleas for help despite witnessing the assault. (*Id.* ¶¶18-20, 52). At some point, Rinaldo flipped Willet over, ripped his pant pockets, and threatened to hit him. (*Id.* ¶21). Willet was eventually placed in the back seat of a police vehicle belonging to two other officers, John and Jane Doe. (*Id.* ¶22). Cirulli then assaulted Willet again by punching him twice in the face. (*Id.* ¶23). Although the assault is alleged to have been captured on video by a City of Buffalo surveillance camera and by an unidentified eyewitness (*id.* ¶28), Willet did not submit either recording to the Court.

Cirulli signed a criminal felony complaint accusing Willet of criminal possession of a controlled substance in the fifth degree with the intent to sell (Dkt. No. 29 (Felony Complaint) at 3), and Willet was booked shortly after midnight (*id.* at 2 (April 20, 2014 Buffalo Police Department Arresting/Booking Report)). The Arresting/Booking Report lists a total of five charges against Willet: (1) criminal possession of a controlled

---

[2] Page number citations for docket entries refer to the page number(s) assigned by CM/ECF.

- 2 -

substance in the fifth degree with the intent to sell; (2) criminal possession of a controlled substance in the fifth degree (narcotics); (3) unlawful possession of marijuana; (4) resisting arrest; and (5) obstructing governmental administration in the second degree. (*Id.* at 2). The disposition of these charges is not stated in the record. The Arresting/Booking Report identifies Cirulli as the arresting officer and Militello as the assisting officer. (*Id.*). A separate document, the Central Booking Bureau Case History, states that Militello helped apprehend Willet and assisted with the investigation, and that Rinaldo supervised the investigation and recovered evidence. (*Id.* at 6).

Willet contends that he injured his head, neck, and lower left abdomen during the incident, and that defendants failed to provide him with medical treatment for his injuries. (Dkt. No. 1 ¶¶26, 56). On April 25, 2014, Willet visited Kenmore Mercy Hospital for treatment. (Dkt. No. 29 at 8-18 (Medical Records)). Medical records from the visit indicate that Willet suffered a pinched nerve, contusions, a non-serious head injury, and a "painful hip injury." (*Id.*). He was prescribed ibuprofen. (*Id.* at 11).

Less than six weeks after the incident, on May 29, 2014, Cirulli pled guilty to a two count misdemeanor information charging him with deprivation of rights under color of law under 18 U.S.C. §242. (Dkt. No. 16-2 (Information); Dkt. No. 16-3 (Plea Agreement)). As a condition of his plea agreement, Cirulli resigned his position as a City of Buffalo police officer. (Dkt. No. 16-3 (Plea Agreement) ¶20).

*Article 78 Proceeding*

After Willet commenced the instant action on April 15, 2015, the City informed Cirulli that it would neither defend nor indemnify him against Willet's claims. (Dkt. No. 18-1 at 2 (April 29, 2015 letter from Corporation Counsel to Cirulli)). Thus, on August

24, 2015, Cirulli filed an Article 78 petition in New York State Supreme Court seeking to compel the City to indemnify him under N.Y. General Municipal Law §50-j. (Dkt. No. 16-5 at 1-11 (Petition)). Section 50-j provides, in relevant part:

> [E]very city . . . shall save harmless, any duly appointed police officer . . . for any negligent act or tort, provided such police officer, at the time of the negligent act or tort complained of, was acting in the performance of his duties and within the scope of his employment.

The City moved to dismiss the petition, arguing that its refusal to indemnify Cirulli was not arbitrary and capricious because Cirulli acted outside the scope of his employment during the assault. (Dkt. No. 16-5 at 12-24 (Motion to Dismiss Petition)). On December 22, 2015, Justice Siwek issued a memorandum decision granting the City's motion to dismiss the petition. (Dkt. No. 16-4 (Memorandum Decision & Judgment)). Justice Siwek agreed with the City that its refusal to indemnify Cirulli was not arbitrary and capricious and that Cirulli acted outside the scope of his employment when he assaulted Willet. (*Id.* at 8 ("Cirulli crossed the line, engaged in criminal activity and was neither acting within the scope of his employment nor furthering the interests of the Buffalo Police Department and the City of Buffalo.")).

*Willet's Complaint and the City Defendants' Summary Judgment Motion*

Willet's complaint alleges eight causes of action: (1) a 42 U.S.C. §1983 Fourth Amendment excessive force claim against Cirulli, Rinaldo, and Militello; (2) a state law battery claim against Cirulli, Militello, the City, and the Buffalo Police Department; (3) a state law assault claim against Cirulli, Rinaldo, and Militello;[3] (4) a §1983 "supervisory liability" claim against Rinaldo, Militello, and John and Jane Doe Officers alleging that

---

[3] Although it is unclear why Willet did not assert his battery claim against Rinaldo and his assault claim against the City, the Court will not second guess what may have been a strategic decision.

- 4 -

these defendants failed to intervene to protect Willet from Cirulli; (5) a §1983 Fourteenth Amendment deliberate indifference claim against Cirulli, Rinaldo, Militello, and John and Jane Doe Officers; (6) a §1983 *Monell* claim against the City and the Buffalo Police Department; (7) a negligent infliction of emotional distress claim against Cirulli, Rinaldo, and Militello; and (8) a "*respondeat superior*" claim alleging negligent supervision, training, and hiring by the City, the Buffalo Police Department, and Rinaldo.  (Dkt. No. 1).

The City Defendants answered Willet's complaint and filed a cross claim for indemnification against Cirulli.  (Dkt. No. 3).  After Cirulli answered the complaint and the cross claim, the Court entered a case management order granting the parties until December 21, 2015 to complete fact discovery and until March 22, 2016 to complete expert discovery.  (Dkt. No. 10).  With the possible exception of initial disclosures, which are mandatory, the parties did not conduct any discovery whatsoever.  On April 22, 2016, the City Defendants, but not Cirulli,[4] moved for summary judgment dismissing Willet's complaint in its entirety.  (Dkt. No. 16).  The City Defendants did not move for summary judgment on their cross claim against Cirulli.  Notwithstanding this fact, Cirulli opposes the City Defendants' motion to the extent it argues that Cirulli acted outside the scope of his employment during the incident.  Willet filed his own opposition to the City Defendants' motion.[5]  (Dkt. Nos. 26, 27, 29).  The Court heard oral argument on the motion on August 15, 2016.  Willet's counsel did not appear for argument.[6]

---

[4] On reply, Cirulli attempts to "join" the City Defendants' summary judgment motion to the extent it seeks dismissal of Willet's deliberate indifference and negligent infliction of emotional distress claims. (Dkt. No. 31 ¶¶3-4). Cirulli's request for summary judgment, raised for the first time on reply, is not properly before the Court and will not be considered.

[5] Specifically, Willet filed an opposing memorandum of law and an attorney declaration with the following exhibits: the Buffalo Police Department Arresting/Booking Report; the felony criminal complaint; the Buffalo Police Department Central Booking Bureau Case History; medical records from Willet's April

## **DISCUSSION**

At the outset, all claims against the Buffalo Police Department should be dismissed because the Department "is merely an arm of the City, and does not have a legal identity separate and apart from the City and cannot be sued." *Yancey v. City of Buffalo*, No. 12-CV-0986S, 2012 WL 6016890, at *3 (W.D.N.Y. Nov. 30, 2012). All claims against the John and Jane Doe Officers should be dismissed as well for failure to prosecute because Willet has not identified and served these defendants despite having ample time to do so. *Barclay v. Poland*, No. 03-CV-6585CJS, 2013 WL 5703176, at *2 (W.D.N.Y. Oct. 17, 2013) ("Plaintiff had the opportunity to learn the names of the John Doe defendants through discovery, but failed to do so. Plaintiff has not identified the John Doe defendants or served them, and the Court has no jurisdiction over them. Accordingly, the John Doe defendant claims are dismissed."); *Jones v. Rock*, No. 9:12-cv-0447(NAM/TWD), 2015 WL 791547, at *21 (N.D.N.Y. Feb. 24, 2015) ("The Court finds that Plaintiff has had ample time and opportunity to discover the identity of the John Doe Defendants and serve them. Given Plaintiff's failure to do so, the Court recommends the *sua sponte* dismissal of John Doe # 1-6 from the action for failure to prosecute.").

The remaining City Defendants — the City, Rinaldo, and Militello — move for summary judgment on the ground that Willet, by failing to take discovery, purportedly has no evidence to support any of his claims. Under Rule 56, summary judgment is to be granted if the moving party "shows that there is no genuine dispute as to any

---

25, 2014 visit to Kenmore Mercy Hospital; the verified complaint; Cirulli's plea agreement; Cirulli's Article 78 petition; and Justice Siwek's Memorandum Decision.

[6]   Willet's counsel also failed to timely oppose the City's Defendants' motion, filing opposition papers only after the Court entered an order to show cause cautioning that the case may be dismissed for failure to prosecute. (*See* Dkt. No. 19).

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Where the nonmoving party bears the ultimate burden of proof on an issue at trial, "the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988). Once the moving party has made a properly supported showing of the absence of any genuine issue as to all material facts, "the nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation marks and citation omitted).  "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'"  *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)). While "[a]ll reasonable inferences and any ambiguities are drawn in favor of the nonmoving party," *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990), to defeat summary judgment the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

I. *<u>Claim One:  Fourth Amendment Excessive Force (Rinaldo, Militello)</u>*

An officer's use of force rises to the level of a Fourth Amendment violation if it is objectively unreasonable.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  The reasonableness of any force used is "judged from the perspective of a reasonable officer on the scene," taking into account factors such as the "severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, Willet has not come forward with any evidence suggesting that Militello used force, let alone an objectively unreasonable amount of force, during the April 19, 2014 incident.  While Militello is alleged to have been one of the arresting officers, there is no evidence indicating that he employed force to accomplish the arrest.  Willet's excessive force claim should therefore be dismissed against this defendant.  As for Rinaldo, his alleged use of force — flipping Willet over, ripping his pants pocket, and threatening to hit him — is *de minimis* and not objectively unreasonable given Willet's attempt to escape arrest and his possession of heroin.  *Rincon v. City of N.Y.*, No. 03 Civ. 8276(LAP), 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005) (throwing the plaintiff onto the floor while executing a search warrant for drugs is *de minimis* and does not violate the Fourth Amendment).  Moreover, Rinaldo's actions are not specifically alleged to have caused Willet's injuries.  *See Wims v. N.Y.C. Police Dep't*, No. 10 Civ. 6128(PKC), 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (dismissing excessive force claim because plaintiff failed to allege any specific injury resulting from officers having thrown him "flat on [his] face unto the filthy ground") (alteration in original).  Therefore, it is recommended that Willet's excessive force claim also be dismissed as against Rinaldo.

    II.    <u>*Claim Two:  State Law Battery (Militello, the City)*</u>

Willet's state law battery claim against Militello is subject to the same standard that applies to his Fourth Amendment excessive force claim.  *See Posr v. Doherty*, 944

F.2d 91, 94-95 (2d Cir. 1991) ("[E]xcept for §1983's requirement that the tort be committed under color of state law, the essential elements of [Fourth Amendment excessive force and state law assault and battery claims are] substantially identical."). Because the Court is recommending that Willet's excessive force claim against Militello be dismissed, it is recommended that his assault claim against that defendant be dismissed as well.

A different standard applies to Willet's battery claim against the City. Under New York law, the City may be held vicariously liable for Cirulli's alleged battery under the doctrine of *respondeat superior* if Cirulli was acting within the scope of his employment at the time of his alleged wrongdoing. *See Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 410-11 (W.D.N.Y. 2008); *see also Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979). The City argues, however, that vicarious liability does not attach to it because Justice Siwek already ruled in its favor on the scope of employment question and because the evidence conclusively shows that Cirulli acted outside the scope of his employment during the assault.

The Court looks to New York law to determine the preclusive effect of Justice Siwek's ruling. *See Cameron v. Fogarty*, 806 F.2d 380, 384 (2d Cir. 1986). Under New York law, "[t]he doctrine of collateral estoppel . . . precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984). "The party seeking to invoke collateral estoppel has the burden to show the identity of the issues,

while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate." *Matter of Dunn*, 24 N.Y.3d 699, 704 (2015).

The City has not met its burden of establishing identity of issue. To be sure, Justice Siwek determined in the Article 78 proceeding that Cirulli acted outside the scope of his employment during the assault. However, she came to this conclusion in deciding whether the City's refusal to indemnify Cirulli was arbitrary and capricious. This inquiry is quite distinct from the one in the instant action of whether the City is vicariously liable for a common law tort claim. *See Matter of Matyas v. Bd. of Educ., Chenango Forks Cent. Sch. Dist.*, 63 A.D.3d 1273, 1274 (3d Dep't 2009) (distinguishing *respondeat superior* analysis from the analysis applicable to Article 78 review of public employer's refusal to indemnify employee); *Matter of Schenectady Police Benevolent Ass'n v. City of Schenectady*, 299 A.D.2d 717, 718 (3d Dep't 2002) (holding that federal district court's finding that officer was acting within the scope of his employment for purposes of *respondeat superior* analysis was "not determinative" of whether the city had to indemnify the officer under General Municipal Law §50-j). Had Justice Siwek decided the scope of employment question in the context of a common law tort claim, she may very well have reached a different conclusion. Thus, identity of issue is lacking here.

Collateral estoppel also does not apply here because Cirulli and Willet were not in privity in the Article 78 proceeding. Under the doctrine of privity, "a person may be bound by a prior judgment to which he was not a party of record." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970). As relevant to the instant action, privity includes "those whose interests are represented by a party to the action." *Id.* Here, Cirulli did

not represent Willet's interests in the Article 78 proceeding, as he brought the proceeding for the limited purpose of challenging the City's refusal to indemnify him.[7] Thus, privity is lacking, and Willet did not have a full and fair opportunity to litigate his claims in the Article 78 proceeding. The City's collateral estoppel defense must therefore be rejected for this reason as well.[8]

Next, the City argues that it cannot be held vicariously liable for Cirulli's battery because the evidence conclusively shows that Cirulli acted outside the scope of his employment during the battery. "The test to determine whether the defendants' actions fall within the scope of their employment is whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of instructions." *Cruz v. New York*, 24 F. Supp. 3d 299, 310 (W.D.N.Y. 2014) (internal quotation marks and citation omitted). Factors to be weighed include "the connection between the time, place and occasion for the act; the history of the relationship between the employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Id.* The foregoing test is "heavily dependent on factual considerations" and "ordinarily [a question] for the jury." *Riviello*, 47 N.Y.2d at 303.

The City argues that the above factors weigh in its favor because Cirulli pled guilty to violating Willet's civil rights and resigned his position as a police officer.

---

[7] The City Defendants also argue that Willet could have intervened in the Article 78 proceeding. This argument is without merit because Willet required Justice Siwek's permission to intervene. *See* N.Y. C.P.L.R. 7802(d). Permission likely would have been denied because an Article 78 proceeding is not the proper venue for Willet to litigate his civil rights claims.

[8] At oral argument, Cirulli's counsel stated that Cirulli is appealing Justice Siwek's decision to the New York State Supreme Court Appellate Division. Because Justice Siwek's decision is not entitled to collateral estoppel effect, the Court need not decide whether the appeal precludes the application of collateral estoppel.

However, Cirulli's guilty plea does not by itself compel the conclusion that he acted outside the scope of his employment during the incident. *Pizzuto v. Cnty. of Nassau*, 239 F. Supp. 2d 301, 307, 314-16 (E.D.N.Y. 2003) (finding correction officers acted within the scope of their employment when they assaulted an inmate notwithstanding the fact they also pled guilty to violating the inmate's civil rights under 18 U.S.C. §§241 and 242).  It is certainly possible for an officer to have violated an individual's civil rights while acting within the scope of his employment. *Cruz*, 24 F. Supp. 3d at 310; *see also Almonte v. N.Y.C. Hous. Auth.*, No. 89 CIV. 7677(SWK), 1990 WL 113125 (S.D.N.Y. July 30, 1990).  As noted, the test is whether the employee committed the act while doing the work of his employer, *no matter how irregularly*. *Cruz*, 24 F. Supp. 3d at 310.

Here, there is evidence suggesting that Cirulli assaulted Willet while doing the work of the City.  On the night of the incident in question, Cirulli was on patrol when he pulled Willet over for speeding.   After Willet fled his vehicle, Cirulli and the other officers apprehended him and placed him under arrest.  These actions are of the type normally carried on by a police officer.  Cirulli has submitted an affidavit to that effect, stating that "all of [his] actions on April 19, 2014 with regard to John T. Willet were performed within the scope of [his] employment as a Buffalo Police Officer and were intended to facilitate the arrest and detention of Mr. Willet for violations of New York State law." (Dkt. No. 24 ¶6).

Further, the assault is alleged to have occurred in the presence of Rinaldo, a supervising officer.  A supervisor's approval of an employee's alleged misconduct supports a finding that the employee acted within the scope of his employment. *See Cruz*, 24 F. Supp. 3d at 310.  Willet contends that Rinaldo was in the "immediate


vicinity" of the assault but ignored his pleas for help (Dkt. No. 1 ¶52), which suggests that Rinaldo may have approved of Cirulli's actions. The City Defendants have not submitted an affidavit from Rinaldo condoning Cirulli's use of force.

Given the conflict between Cirulli's guilty plea and the other evidence in the record, the Court finds that the vicarious liability question should be decided by the trier of fact.  It is therefore recommended that the City not be granted summary judgment on Willet's battery claim.

### III.   Claim Three:  State Law Assault (Rinaldo, Militello)

Willet's assault claim is governed by the same standard that applies to his excessive force and battery claims.  *Posr*, 944 F.2d at 94-95.  Because the Court is recommending that Willet's excessive force and battery claims be dismissed as against Rinaldo and Militello, it is recommended that his assault claim against these two defendants be dismissed as well.

### IV.   Claim Four:  Failure to Intervene (Rinaldo, Militello)

Police officers "have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence."  *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001).  "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know:  (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."  *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).  "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm

from occurring." *Id.* "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.*

A reasonable jury could conclude that Militello and Rinaldo failed to intervene to prevent Cirulli's use of force. In particular, Willet states that Militello and Rinaldo were in the immediate vicinity of the assault but ignored his pleas for help, which raises a genuine issue of material fact as to whether the two officers had a realistic opportunity to protect Willet from Cirulli. Further, had Militello and Rinaldo intervened during or after the initial assault, Cirulli may very well have been restrained and thereby precluded from assaulting Willet again in the police car. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (finding that defendant who witnessed initial assault could be held liable for failing to intervene to prevent a second assault because the initial assault "alerted [the defendant] to the need to protect [the plaintiff] from further abuse"). Accordingly, it is recommended that Militello and Rinaldo not be granted summary judgment on Willet's failure to intervene claim.

V.  *Claim Five:  Fourteenth Amendment Deliberate Indifference (Rinaldo, Militello)*

A Fourteenth Amendment deliberate indifference claim asks whether the defendant acted with deliberate indifference to the plaintiff's serious medical needs. *Caiozzo v. Koreman*, 581 F.3d 63, 71-72 (2d Cir. 2009) (holding that a pretrial detainee's deliberate indifference claim arises under the Fourteenth Amendment but is governed by the same standard applicable to a convicted prisoner's Eighth Amendment deliberate indifference claim). "A sufficiently serious medical condition is one which

contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Woods v. Town of Cheektowaga*, No. 11-CV-343S, 2012 WL 5288767, at *6 (W.D.N.Y. Oct. 23, 2012) (internal quotation marks and citations omitted).

The medical records from Willet's hospital visit indicate that he suffered a pinched nerve, contusions, a non-serious head injury, and a painful hip injury during the incident. None of these conditions are capable of producing death or degeneration, nor do they raise the inference that Willet suffered extreme pain. There is no other evidence in the record to substantiate a "condition of urgency." *Id.* Thus, it is recommended that Willet's deliberate indifference claim be dismissed.

    VI.    <u>*Claim Six:* Monell *Claim (the City)*</u>

To hold a municipality liable under Section 1983, "action pursuant to official municipal policy" must have caused the alleged constitutional injury. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).

Here, Willet contends that the City "failed to instruct, supervise, control[,] and discipline" its officers to refrain from harassing its citizens and violating his constitutional rights. (Dkt. No. 1 ¶61). Willet has not, however, come forward with any evidence of a City policy or custom in this regard. *See Dawson v. Cnty. of Westchester*, 351 F. Supp. 2d 176, 195-96 (S.D.N.Y. 2004) (granting summary judgment dismissing *Monell* claim

where plaintiffs failed to provide any evidence beyond their conclusory statement that the defendant county "maintained a policy and/or practice and/or custom of [ ] disparate treatment"). Nor is there any evidence that a City policy or custom caused Willet's alleged constitutional injuries. *Pittman v. City of N.Y.*, No. 14-CV-4140(ARR)(RLM), 2014 WL 7399308, at *7 (E.D.N.Y. Dec. 30, 2004) ("A Monell claim cannot go forward based on conclusory claims regarding a single incident without more evidence that connects this incident to a municipal policy or practice."). There is simply no evidence suggesting that what happened to Willet on April 19, 2014 was anything more than an isolated incident. *Jones*, 691 F.3d at 81 ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). Therefore, it is recommended that Willet's *Monell* claim be dismissed.

      VII.    *Claim Seven: Negligent Infliction of Emotional Distress (Rinaldo, Militello)*

Willet likely intended his negligent infliction of emotional distress ("NIED") claim to be an intentional infliction of emotional distress ("IIED") claim, as he alleges that Militello and Rinaldo acted "with the *intention* of causing [him] severe emotional distress." (Dkt. No. 1 ¶70) (emphasis added). Regardless of whether the seventh cause of action sounds in IIED or NIED, and putting aside the elements of those claims, the claim should be dismissed as duplicative of the excessive force, battery, assault, and failure to intervene claims because it relies on the same allegations underlying those causes of action. *See Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 316 (S.D.N.Y. 2005) (dismissing NIED and IIED claims that were duplicative of other

causes of action). Therefore, it is recommended that Willet's seventh cause of action be dismissed.

### VIII. *Claim Eight: Negligent Supervision, Training, and Hiring (the City, Rinaldo)*

Willet's eighth claim alleges that both the City and Rinaldo negligently supervised the officers who were present during the incident and that the City was also negligent in its hiring and training of the officers. An essential element of a negligent hiring/training/supervision claim "is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Cruz*, 24 F. Supp. 3d at 311 (internal quotation marks and citation omitted). There is no evidence in this case that any officer present during the incident had a propensity for assault or other misconduct. Thus, it is recommended that Willet's negligent supervision, training, and hiring claim be dismissed.

### **CONCLUSION**

For the foregoing reasons, it is recommended that the City Defendants' summary judgment motion be granted in part and denied in part as follows: all claims against the Buffalo Police Department should be dismissed; all claims against the John/Jane Doe Officers should be dismissed without prejudice for failure to prosecute; the first claim (excessive force) should be dismissed as against Militello and Rinaldo; the second claim (battery) should be dismissed as against Militello; the third claim (assault) should be dismissed as against Rinaldo and Militello; the fifth claim (deliberate indifference) should be dismissed as against Rinaldo and Militello; the sixth claim (*Monell*) should be dismissed in its entirety; the seventh claim (NIED/IIED) should be dismissed as against Rinaldo and Militello; and the eighth claim (negligent supervision, training, and hiring)

should be dismissed in its entirety.  The following claims should remain in the action: the first claim (excessive force) against Cirulli; the second claim (battery) against Cirulli and the City; the third claim (assault) against Cirulli; the fourth claim (failure to intervene) against Rinaldo and Militello; the fifth claim (deliberate indifference) against Cirulli; and the seventh claim (NIED/IIED) against Cirulli.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72.  Any requests for an extension of this deadline must be made to Judge Arcara.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.***  See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal

authority."  ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

Finally, pursuant to Federal Rule of Civil Procedure 73(b)(2), the parties are reminded that the Magistrate Judge is available to conduct all proceedings in this action (including a jury or nonjury trial) and to order the entry of a final judgment.  The judgment may then be appealed directly to the United States Court of Appeals like any other judgment of this Court.  The Magistrate Judge may exercise this authority only if all parties voluntarily consent.  You may consent to have the case referred to a Magistrate Judge, or you may withhold your consent without adverse substantive consequences.  The name of any party withholding consent will not be revealed to any judge who may otherwise be involved with the case.

**SO ORDERED.**

Dated:      September 15, 2016
            Buffalo, New York

                                        */s/ Michael J. Roemer*
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge